# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 13-138 |
| | ) |
| ANDRE DWAYNE RUFFIN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION IN LIMINE (ECF No. 91) filed by Defendant Andre Dwayne Ruffin with a brief in support (ECF No. 92). The government has filed a response in opposition (ECF No. 98). Accordingly the motion is ripe for disposition.

### I. Background

On May 7, 2013, a federal grand jury sitting in the Western District of Pennsylvania returned a one-count Indictment against Ruffin which charged him with the crime of Possession of a Firearm by a Convicted Felon on or about April 22, 2013 in violation of 18 U.S.C. §§ 922(g)(1), 924(e). On October 15, 2013, the government filed a Superseding Indictment which charged Ruffin with the crime of Possession of Firearms *and* Ammunition by a Convicted Felon on or about April 22, 2013 in violation of the same federal statutes.

The charges against Ruffin stem from a series of events that unraveled after his so-called common-law wife, Leicia Jackson, died intestate on May 18, 2012. Prior to her death, Leicia and Ruffin shared a home located in the Munhall Borough at 704 East 14th Avenue, Homestead, Pennsylvania. The title to the property was in Leicia's name. Loretta Jackson, Leicia's mother, was appointed as the personal representative of her daughter's estate on June 27, 2012. Within days of the appointment, Ruffin sent Loretta a vaguely threatening letter in which he challenged

her right to the property. According to court records, Loretta and Ruffin were scheduled to have a hearing regarding the probate of the estate on April 12, 2013.

On April 11, 2013, Loretta was shot and killed inside of her home. Officers from the West Mifflin Police Department were dispatched to the residence after the activation of an alarm system and the receipt of a 9-1-1 call from an unidentified woman inside the home. Upon their arrival, police officers found one woman inside the residence in a locked bedroom as well as Loretta inside a second bedroom with multiple gunshot wounds to her head and body. The same day, the West Mifflin Police Department requested investigative assistance from the Allegheny County Police Department's Homicide Section. The homicide investigation remains ongoing.

On April 12, 2013, Detective Scott Towne of the Homicide Section went to 704 East 14th Avenue in an attempt to speak with Ruffin about Loretta. Detective Towne instead encountered Ruffin's girlfriend, Sataria Hamlin, at the residence and asked that Ruffin contact him via telephone. Additionally, Detective Towne observed a video surveillance system on the exterior of the structure.

On April 15, 2013, Detective Towne interviewed Ruffin who claimed that he was at home with Hamlin on the evening of Loretta's murder. One week later, on April 22, 2013, West Mifflin Police Officers and members of the Allegheny County Police Department, Homicide Section executed a search warrant at the residence of Ruffin and Hamlin to recover the video recordings and corroborate or disprove his alibi defense.

Immediately prior to the execution of the search warrant, Officer Jamie Caterino of the Munhall Police Department observed Ruffin exit the residence and depart in his vehicle. Upon learning this information, Detective Michael Feeney of the Allegheny County Police Department and several other officers conducted a car-stop of Ruffin who stated that his residence was

unoccupied. Detective Feeney relayed this information to the officers who were executing the search warrant, which included Allegheny County Homicide Detective Lane Zabelsky.

Detective Zabelsky and Officer Caterino soon approached the residence and announced their presence at which time Hamlin opened the door. Based on the apparent contradiction between Ruffin's statements and Hamlin's presence, Detective Zabelsky performed a protective sweep of the residence. In a second-floor bedroom, Detective Zabelsky first observed one firearm in an open dresser drawer (later determined to be a starter pistol). In another second-floor bedroom, Detective Zabelsky observed a second firearm in a safe which had an ajar door.

Law enforcement officers then applied for and obtained a second search warrant on April 22, 2013 to search for and seize the firearms and any other weapons in the residence. Officers later recovered, *inter alia*, (1) a Rock River Arms pistol, Model LAR-PPS, caliber 5.56, bearing serial number BA003375; (2) a Spike's Tactical Receiver, Model ST15, bearing serial number SBR-09005; and (3) multiple rounds of .223 caliber and 7.62 x 39 caliber ammunition—the firearms and ammunition charged in the Superseding Indictment. According to the Superseding Indictment, Ruffin is prohibited from possessing firearms and ammunition due to his prior felony convictions.

A later law enforcement investigation and review of the seized firearms revealed that they had been purchased by Hamlin. Agents from the Bureau of Alcohol, Tobacco, Firearm and Explosives ("ATF") interviewed Hamlin who allegedly indicated that she "straw purchased" these firearms for Ruffin at his request. The government charged Hamlin with two counts of falsification of firearms purchase form. *See United States v. Hamlin*, 2:13-cr-00138-TFM (W.D. Pa. Oct. 15, 2013). Hamlin has since pleaded guilty to these offenses and has been sentenced.

A jury trial is scheduled to commence on the instant Superseding Indictment on Monday, February 23, 2015. In anticipation of trial, the government has provided notice of its intention to present the following prior act evidence at trial pursuant to Fed. R. Evid. 404(b):

1. A May 2010 arrest of Andre Ruffin at 704 East 14th Avenue, Homestead, PA for possession of a firearm and related charges, a search warrant for that location and evidence recovered therein;

2. Andre Ruffin's 2010 attempt to tamper with a witness/suborn perjury in relation to the criminal charges then pending in relation to #1 above;

3. 2010–2013 business records reflecting firearm related purchases being made with a credit card registered to Andre Ruffin and products being delivered to him and/or to his residence at 704 East 14th Street, Homestead, PA;

4. Andre Ruffin's September 2002 possession of a firearm arrest and resulting criminal proceedings;

   a. This information will include, but is not limited to, documents and a handwritten note reading, "Conviction for having my gun. But in my wife's name," recovered on April 22, 2013, from inside of 704 East 14th Avenue, Homestead, PA;

5. Firearms shooting incidents involving Andre Ruffin that occurred in: (a) September 2012 in the vicinity of 704 East 14th Avenue, Homestead, PA 15120, and (b) 2013 in the vicinity of 936 East 8th Avenue, Munhall, PA 15120;

6. Andre Ruffin's membership, and position of leadership, within the Ruff Life Motorcycle Club, an Outlaw Motorcycle Group;

7. Instances of Andre Ruffin obtaining firearms through "straw purchases" that occurred in or around: (a) September 2010, (b) February 2011, (c) September 2011, (d) January 2012, and (e) April 2012; [and]

8. Andre Ruffin's destruction of firearms in or around December 2012.

(ECF No. 89). The notice also indicates that the government does not intend to use, as Rule 404(b) evidence, any information regarding Ruffin's prior criminal convictions unless noted above. The instant motion followed.

## II. Legal Standard

Evidence of a criminal defendant's uncharged conduct, including crimes, wrongs or other acts, may be admissible if the evidence is intrinsic to the charged offense; or the evidence is extrinsic to the charged offense but is offered for a proper purpose under Rule 404(b). *See United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). In *United States v. Green*, the United States Court of Appeals for the Third Circuit explained that the "intrinsic label" is limited to "two narrow categories of evidence": evidence that "directly proves the charged offense," and evidence of "uncharged acts performed contemporaneously with the charged crime" that "facilitate the commission of the charged crime." *Id.* at 248-49 (internal quotation marks and citations omitted). This type of evidence is admissible without the need for the prosecution to provide notice to the defendant before trial or for the court to provide limiting instructions to the jury during trial. *Id.* at 247. Thus, as a practical matter, "[a]ll that is accomplished by labeling evidence 'intrinsic' is relieving the Government from providing a defendant with the procedural protections of Rule 404(b)." *Id.* at 248.

If the evidence is not intrinsic, it "must be analyzed under 404(b)." *Id.* at 249. Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may be admissible for another relevant purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The United States Court of Appeals for the Third Circuit has recently explained that "Rule 404(b) is a rule of general exclusion, and carries with it 'no presumption of admissibility.'" *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quoting 1

Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013)). Thus, the "permitted uses" should be treated as "exceptions" to the general rule, and "[a]s is generally the case with exceptions," the burden of establishing that the evidence is admissible falls on the proponent of the evidence—in this case, the government. *Id.*

Further, because of the highly prejudicial nature of other-acts evidence, the rule "requires care from prosecutors and judges alike." *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013). The Court must follow a four-part framework in deciding the whether evidence should be admitted under Rule 404(b): prior act evidence is inadmissible unless the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested. *Id.* at 441 (citations omitted).

The first step requires the Court to determine "whether the evidence is probative of a material issue other than character." *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2003) (citations omitted). To determine whether an "identified purpose is 'at issue,' courts should consider the 'material issues and facts the government must prove to obtain a conviction.'" *Caldwell*, 760 F.3d at 276 (quoting *United States v. Sampson,* 980 F.2d 883, 888 (3d Cir. 1992)). While "the burden on the government is not onerous," *Sampson*, 980 F.2d at 887, our court of appeals has "stress[ed] that 'a proponent's incantation of the proper uses of [prior act] evidence . . . does not magically transform inadmissible evidence into admissible evidence," *Caldwell*, 760 F.3d at 276 (quoting *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)). Rather, the specific purpose must be "'of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401(b)).

6

At the second step of the analysis, the government must "explain how the evidence is relevant" to, or how it tends to establish, the identified non-propensity purpose. *Id.* "This step is crucial." *Id.* The government "must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which* can be the inference that because the defendant committed . . . [such an act] before, he therefore is more likely to have committed this one.'" *United States v. Lee,* 612 F.3d 170, 186 (3d Cir. 2006) (quoting *Sampson*, 980 F.2d at 887) (emphasis added). If the government fails "to articulate this chain of inferences," the Court must exclude the proffered evidence. *Caldwell,* 760 F.3d at 277 (citing *Sampson,* 980 F.2d at 888).

The Court's task is not over even "once it finds the proponent has shown that the evidence is relevant for a proper, non-propensity purpose." *Id.* The Court must then proceed to decide, under Rule 403, "whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence." *Id.* (citing *Sampson,* 980 F.2d at 889). The Rule 403 balancing takes on special significance when dealing with Rule 404(b) evidence because "'few categories of evidence bring greater risk of prejudice to the accused . . . .'" *Id.* (quoting Mueller, *Federal Evidence* § 4:28, at 731). If the Court determines that the evidence survives the Rule 403 balancing test, then it must still provide a limiting instruction to the jury at the time the evidence is admitted if so requested by the defendant. *Id.*

### III. Discussion

In his motion in limine, Ruffin contends that the prior act evidence identified by the government is inadmissible under the Rule 404(b) framework. The Court now turns to these issues.

7

### A. The May 2010 Firearms Arrest; The Witness Tampering Incident; Straw Purchases of Firearms; and Destruction of a Rifle Given to Uncle John

The government seeks to introduce evidence of a May 2010 firearms arrest, a witness tampering incident, straw purchases of firearms by Ruffin, and his previous destruction of firearms. The facts surrounding those incidents, as alleged by the government, are as follows: On May 26, 2010, Ruffin was arrested at his home at 704 East 14th Avenue for possession of a firearm. At that time, Pennsylvania State Troopers assigned to the Auto Theft Task Force observed Ruffin in his garage performing work on a motorcycle and stopped to speak with him. During their conversation, Ruffin consented to a search of the garage to allow the officers to look for stolen automobile parts. The officers observed stolen automobile parts, a handgun in an open drawer a few feet behind Ruffin, and two pieces of body armor nearby. Ruffin was arrested. During a later search of the residence, officers recovered multiple rounds of ammunition from a safe located in the front bedroom of the house.

Law enforcement officers then interviewed Ruffin who claimed that the seized firearm belonged to his "Uncle John," later identified as John Jackson. Further, Ruffin told the officers that he took the firearm from Uncle John so that he would not use it in a retaliatory shooting. During the interview, the officers apparently explained the concept of "constructive possession" to Ruffin who admitted that he did in fact constructively possess the firearm, but he denied any knowledge of the ammunition found in the safe even though he provided the combination.

Ruffin was later prosecuted for possessing the firearm, ammunition, and stolen motorcycle parts. While incarcerated in the Allegheny County Jail, Ruffin spoke with Leicia on the jail's telephone which recorded their conversation. In the recordings, Ruffin repeatedly asks Leicia to find Uncle John and convince him to complete a false affidavit disavowing any knowledge between Ruffin and the firearm, which he could then present at his preliminary

hearing. Other phone calls reflect that Uncle John completed the affidavit, had it notarized, and provided it to Ruffin's attorney. The recorded phone calls also indicate that Leicia and Ruffin's associates, which included his brother, "stood guard" over Uncle John to ensure that he attended the preliminary hearing in a condition suitable for a court appearance. For some reason, the charges against Ruffin were dropped and the preliminary hearing was never held.

ATF agents later conducted a series of interviews with Uncle John who provided recorded statements in which he admitted that he provided Ruffin with the seized firearm and body armor. Uncle John also admitted to previously "straw purchasing" firearms for Ruffin at his request and to signing the false affidavit. ATF agents then requested that Uncle John retrieve any firearms from Ruffin. Within days, Uncle John recovered from Ruffin a handgun and a rifle that had been cut into several pieces.

Here, the government submits that this evidence is admissible to demonstrate Ruffin's knowledge, lack of mistake, and consciousness of guilt.[1] In support, the government first contends as follows:

> Specifically the evidence demonstrates that the defendant knows and understands that he, as matter of law, can be held responsible for constructive possession of another person's firearms. Particularly probative of this issue is the content of the defendant's statement to the police where he admitted that he did constructively possess the gun. The evidence also demonstrates that when the defendant is found to have a firearm and ammunition in his home, to which he had access, and legally belongs to one of his close associates, he is not of a mistaken belief that such a factual circumstance is legal (*i.e.* it shows that he knows he cannot be

---

1. At one point in its brief, the government also takes the position that Ruffin placed the issue of his knowledge at issue, "[h]aving pled not guilty to the charges against him." This line of reasoning was expressly rejected by the Court of Appeals for the Third Circuit in *Caldwell*. *See* 760 F.3d at 281. As our court of appeals explained:

> We believe it necessary to address the District Court's suggestion that Caldwell "put his knowledge at issue by claiming innocence." It is unclear whether the District Court understood Caldwell to have "claimed innocence" by testifying at trial, or more broadly by pleading not guilty. Either way, we believe this line of reasoning is improper.

*Id.* Nevertheless, Defendant's knowledge is "at issue" in light of the government's constructive possession theory. *C.f. Caldwell*, 760 F.3d at 279 ("Because the Government proceeded solely on a theory of actual possession, we hold that Caldwell's knowledge was not at issue in the case.").

9

> found with a gun and ammunition in his home even if it doesn't legally belong to him). This showing is clearly relevant for the current trial as knowledge and possession are the only issues in contest.

(ECF No. 98 at 14). The government makes a comparable argument regarding the alleged witness tampering, straw purchases, and firearms destruction:

> Similar to the showing explained above the evidence here is highly probative. The defendant previously tampered with a witness because he knew he could not possess firearms. He also used that witness to buy him firearms because he knew he could not legally obtain them. Finally, he then destroyed these firearms because he wanted to distance himself from the firearms. The fact that the defendant *took these various measures in the past*, in a constructive possession case, *shows that here, in this case,* the defendant remains aware of the prohibition against his possessing guns and his awareness that he may be held criminally responsible for items found within his home.

(ECF No. 98 at 15) (emphasis added). The Court finds that this evidence is not admissible into evidence at trial under Rule 404(b).

"[T]he Government may introduce Rule 404(b) evidence only if it is offered for a non-propensity purpose that is probative of one of the elements essential for a conviction." *United States v. Brown*, 765 F.3d 278, 292 (3d Cir. 2014). Unlawful possession of a firearm by convicted felon, 18 U.S.C. § 922(g)(1), "requires proof that: '(1) the defendant has been convicted of a crime of imprisonment for a term in excess of one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm traveled in interstate commerce.'" *Id.* at 291-92 (quoting *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012)). "The government can prove possession of a firearm [or ammunition] for purposes of § 922(g)(l ) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon [or ammunition] (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon [or ammunition] was found (constructive possession)." *Caldwell*, 760 F.3d at 278 (citing *United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007)).

In a constructive possession case, such as this one, "[e]vidence of knowledge is critical . . . as a defendant will often deny any knowledge of a thing found in an area that is placed under his control (*e.g.*, a residence, an automobile) or claim that it was placed there by accident or mistake." *Brown*, 765 F.3d at 292 (internal quotation marks, alterations, and citation omitted). But the government must do more than "merely identify a valid non-propensity purpose under Rule 404(b)(2)." *Id.*

"Crucially, the Government must also show that the evidence is relevant to that purpose" by "clearly articulat[ing] how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the proffered prior offense], he therefore is more likely to have committed [the charged offense]." *Id.* at 292-93 (citation omitted and alterations in original). At this step, the government misses the mark.

The government fails to explain how Ruffin's previous arrest for constructive possession of a firearm, attempt to tamper with a witness, use of Uncle John as a straw purchaser and destruction of a rifle tends to prove that he knowingly possessed the firearms found in this case. Rather, the government's position appears to rest on the flawed assumption that Defendant's understanding (or lack thereof) of the law has any relevance to whether he knowingly possessed a firearm and/or ammunition in this case. It does not.

As to the "knowing possession" element, the government must only prove "the defendant's awareness that he possessed the firearm; the government need not demonstrate that the defendant possessed the firearm with an intent to cause harm, or with knowledge that such possession was unlawful." *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). *See also United States v. Davis*, 328 F. App'x 138, 143 (3d Cir. 2009) ("Section 922(g) is not a specific intent statute . . . . The government need only prove that [the defendant] knowingly possessed a

11

firearm—that the possession was not an accident or mistake.") (internal quotation marks and citation omitted). Against this backdrop, none of the evidence proffered by the government "would [ ] materially advance the prosecution's case." *Brown*, 765 F.3d at 291.

Moreover, the evidence fails to shed any light on whether Ruffin knew about the existence of the firearms and ammunition in this case. In the mind of a juror, the evidence would instead offer little more than an improper propensity link between the past and present. As *Brown* instructs, this Court must ask "How, exactly, does Ruffin's admission to ATF agents that he constructively possessed a firearm in 2010 suggest that he had knowledge of the firearms and ammunition found in his residence on April 22, 2013?" This question remains unanswered by the government to the satisfaction of the Court. As for the witness tampering, straw purchases from Uncle John, and the destruction of the rifle—events also three years removed from this case—the evidence similarly tends only to show Ruffin's propensity to commit firearms-related crimes. Accordingly, the Court will grant Defendant's motion in limine as to the May 2010 firearms arrest, the witness tampering incident, straw purchases of firearms from Uncle John, and the destruction of the rifle.[2]

### B. Records Reflecting Deliveries of Firearms-Related Materials to Defendant's Residence

In addition, the government seeks to introduce certified business records from fourteen different businesses reflecting the delivery of a variety of firearms accessories to Ruffin's residence. These purchases include a lower and upper receiver, an AR-15/M16 upper barrel, a Ruger 32-round and 20-round magazine, a red laser sight, a night vision riflescope and a tactical vest. All of these items were sold, billed and/or shipped to "Andre Ruffin" at "704 East 14th Avenue." Further, the shipping records apparently reflect (and Hamlin has allegedly confirmed)

---

2. The Court will address the straw purchases in greater detail below.

that the final delivery of a firearm accessory occurred on April 22, 2013 before the police executed the search warrant.

Assuming the purported purchase of the firearms accessories by Ruffin constitutes "other acts" evidence under Rule 404(b)—the government persuasively argues that it does not—the Court finds that it is admissible.[3] First, the government has identified a proper non-propensity purpose: Ruffin's knowledge of the existence of the firearms and ammunition in this case. Second, it sets forth a logical chain of inferences that does not include a propensity link, explaining that the purchase of accessories by Ruffin to enhance the firearms ultimately seized made it more likely than not that he was aware of and intended to use the contraband. Third, the proffered evidence is highly probative of the issue of knowledge. Any testimony or evidence regarding the certified business records that allegedly show delivery of a variety of firearms accessories to Ruffin's residence will likely be a minor segment of the government's case against him. As the government further highlights, the evidence is not inherently "bad" or so sensational that it will create a hostile feeling against Ruffin or lead the jury to convict him on an emotionally charged basis. Even so, any remaining prejudice can be limited by an appropriate jury instruction, and the jury in this case may be so instructed if requested. Therefore, the Court will deny Defendant's motion in limine as to the certified business records.

**C. Defendant's Prior Use of Straw Purchasers of Firearms**

The government also seeks to admit evidence that Ruffin obtained firearms through straw purchases made by Uncle John in September 2010, February 2011, and January 2012 and by

---

3. The government makes a fleeting reference to Hamlin's alleged observation of Ruffin's actual possession of a firearm on the day law enforcement executed the search warrant. The Court has no difficulty in concluding that this evidence is also admissible. *See Caldwell*, 760 F.3d at 282-83 ("If the proffered evidence consisted of eyewitness testimony that Caldwell threatened another individual with a black handgun two hours before his arrest, the chain of logical inferences could be forged as follows: Caldwell possessed a black handgun earlier that evening, therefore it is less likely that a similar black handgun was unknowingly deposited in his backpack.").

13

Hamlin in September 2011 and April 2012. As to Ruffin's prior use of Uncle John as a straw purchaser, the Court finds that this evidence is not admissible.

The government once again relies on a propensity-laced argument in its attempt to articulate a chain of inferences:

> As a result[,] these prior acts are highly probative of the defendant's knowledge and absence of mistake regarding his later constructive possession of firearms. Because he took the steps outlined above in order to obtain guns in the past demonstrates that he knew he could not possess the guns at issue in this trial.

(ECF No. 98 at 20). As in *Brown*, this evidence would instead "require the jury to conclude that because he used a straw purchaser in the past, he must therefore have used a straw purchaser here. This is propensity evidence, plain and simple."[4] 765 F.3d at 293. Therefore, the Court will not admit at trial Ruffin's prior use of straw purchases as they relate to Uncle John.

The two straw purchases made by Hamlin will, however, be admissible as intrinsic evidence. The government alleges that Hamlin (who has since pleaded guilty to these offenses) straw purchased for Ruffin the two firearms that he is charged with unlawfully possessing: a Rock River Arms pistol, model LAR-PPS, caliber 5.56, bearing serial number BA003375; and a Spike's Tactical Receiver, Model ST15, bearing serial number SBR-09005. Our court of appeals confronted a nearly identical scenario in *United States v. Hynson*, holding that "the evidence pertaining to [Defendant's] straw purchasing scheme was not propensity evidence—it was intrinsic evidence of the crimes charged. 451 F. App'x 91, 95 (3d Cir. 2011). The *Hynson* Court

---

4. The government argues that "[t]his evidence also is not admitted for any propensity purpose because the argument for admission is not that since he used a straw purchaser before he used a straw purchaser now; the argument is that because he used a straw purchaser in the past he previously knew that he couldn't possess guns and so now he still must have known that that he was not permitted to possess guns." (ECF No. 98 at 20-21). The Court once again emphasizes that "the Government may introduce Rule 404(b) evidence *only if* it is offered for a non-propensity purpose that is probative of one of the *elements* essential for a conviction." *Brown*, 765 F.3d at 292 (emphasis added). And the government "'need not demonstrate that [Ruffin] possessed the firearms [or ammunition] . . . with knowledge that such possession was unlawful.'" *United States v. Jackson*, 282 F. App'x 999, 1001 (3d Cir. 2008) (quoting *Dodd*, 225 F.3d at 344).

14

went on to emphasize that "[i]n fact, one of the guns purchased by [Defendant's] former girlfriend was the basis for the illegal possession charge against [him]." *Id.*

While this evidence could be substantially prejudicial, the Court "ha[s] no discretion to exclude it because it is proof of the ultimate issue in the case." *United States v. Gibbs*, 190 F.3d 188, 216-18 (3d Cir. 1999) (quotation marks and citation omitted). Therefore, the Court will admit at trial Ruffin's use of straw purchases as they relate to Hamlin.

Accordingly, the Court will grant in part and deny in part Defendant's motion in limine as to the straw purchases.

**D. Defendant's Destruction of a Firearm Given to Hamlin**

Further, the government seeks to admit evidence that Hamlin previously observed Ruffin cut into several pieces one of the firearms (the government does not specify which one) that he is charged with unlawfully possessing. As the government alleges, Ruffin destroyed the firearm after Hamlin attempted move out of their house following an argument but welded it back together after they reestablished their relationship. The Court finds that this evidence is admissible.

Unlike the destroyed rifle provided to Uncle John, the government offers this evidence to show that Ruffin knew he possessed (and in fact possessed) a firearm that he is charged with unlawfully possessing. *C.f. Caldwell*, 760 F.3d at 283 ("'If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably.'") (quoting *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012)). This evidence will corroborate anticipated witness testimony from Hamlin and is intrinsic to the crime charged in

15

the Superseding Indictment. Therefore, the Court will deny Defendant's motion in limine as to the evidence surrounding the destruction of this firearm.

**E. The 2002 Firearms Arrest**

In 2002, Ruffin was arrested for being a prohibited person in possession of a firearm. While the charge was pending, Ruffin was released from custody on bond that his family members and associates had posted. Ruffin was later convicted of the offense, but it was reversed on appeal. The District Attorney's Office then dropped all charges.

During the search of his residence on April 22, 2013, law enforcement officers observed in the front bedroom a pile of papers related to his bond that was issued for the 2002 arrest. Affixed to the first page of the paperwork was a "post-it" note, allegedly bearing Ruffin's handwriting, that states "Conviction for having my gun. But in my wife's name." The government does not seek to admit into evidence the substance of the arrest, conviction and reversal or the nature of the underlying conduct, conceding that such information is unfairly prejudicial.

The government nevertheless contends that the post-it note and bond paperwork are admissible under Rule 404(b) for two reasons. First, the government maintains that the post-it note, "which is essentially an admission to a prior possession of a firearm, is probative of the defendant's knowledge that he can knowingly possess a firearm that is legal registered to (or belonging to) another person." (ECF No. 98 at 26). *See also id.* ("[T]his 'post-it' note demonstrates that previously the defendant was arrested and faced criminal charges for possessing a gun belonging to his wife."). Second, the government argues that "[d]emonstrating that the defendant's important personal paperwork was found within [the front bedroom]

demonstrates that he has control over the room and indicates not only his residence but occupation of that specific room." *Id.*

The Court finds that the evidence of the post-it note is not admissible. Although the government submits that the post-it note will rebut Ruffin's anticipated defense that the firearms belonged only to Hamlin, a jury instruction on joint possession would also take this issue into account without allowing the government to introduce evidence that only tends to show Ruffin's propensity to commit gun crimes. *See United States v. Smith*, 99 F. App'x 372, 375 (3d Cir. 2004) ("The joint possession instruction took into account the situation where the jury could believe that in fact Ealey was the owner of the gun, as defense counsel argued, but could also believe that Smith had some involvement in possessing it.").

The Court also finds that the evidence regarding the existence of Ruffin's personal paperwork in the front bedroom is admissible. There is relevant evidentiary value in demonstrating that documents relating to Ruffin were located in close proximity to the firearms and ammunition recovered from the safe. Any potential prejudice regarding these documents is limited by the government agreeing not to disclose the substance of the underlying arrest, conviction, and reversal or the nature of the underlying conduct. The Court may also issue a cautionary instruction to the jury if so requested.

Accordingly, the Court will grant in part and deny in part the motion in limine as to the 2002 arrest.

**F. Defendant's Membership in Ruff Life Motorcycle Club; Prior Firearms Shootings; and the Homicide Investigation**

The government currently does not intend to introduce evidence of Ruffin's membership and position of leadership in the Ruff Life Motorcycle Club; prior shootings involving Ruffin; or

the ongoing homicide investigation into the murder of Loretta Jackson.[5]  Therefore, the Court will deny as moot Defendant's motion in limine as to these items.

**IV.     Conclusion**

For the reasons hereinabove stated, the Court will grant in part and deny in part Defendant's motion in limine.  An appropriate Order follows.

McVerry, S.J.

---

5.  To avoid any prejudice to Ruffin, the government also proposes that any witness from the Homicide Unit will identify themselves as being employed by the Allegheny County Police as detectives who investigate felony offenses.  The Court agrees with this proposal.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 13-138 |
| | ) |
| ANDRE DWAYNE RUFFIN, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 13th day of February, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that MOTION IN LIMINE (ECF No. 91) filed by Defendant Andre Dwayne Ruffin is **GRANTED IN PART** and **DENIED IN PART**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: Jonathan B. Ortiz
Email: jonathan.ortiz2@usdoj.gov

Patrick K. Nightingale
Email: pknightingale@mac.com

(via CM/ECF)