IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | Criminal No. 2:13-CR-00138-MRH |
| | ) | Civil No. 17-CV-00492-MRH |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDRE DWAYNE RUFFIN, | ) | |
| | ) | |
| Petitioner, | | |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Following a jury trial before another member of this Court in which he was found guilty of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Petitioner Andre Ruffin ("Mr. Ruffin") was sentenced to 300 months of imprisonment. (ECF No. 146.) At the time of sentencing, the applicable Sentencing Guidelines were derived from Total Offense Level 34, Criminal History Category VI, with an advisory Guideline range of 262 to 327 months imprisonment.

Though the firearm possession statute ordinarily carries a 10-year statutory maximum sentence, the sentencing court found that Mr. Ruffin was subject to an enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) based on his three prior convictions which were classified as violent felonies. (ECF No. 142.) The sentencing court also found that Mr. Ruffin was an armed career criminal under the Sentencing Guidelines, U.S.S.G. §§ 4B1.4(b)(1)-(3), (c)(1)-(3). (*Id.*) This meant that the statutory minimum sentence became 180 months, the

statutory maximum sentence was life, and the applicable Sentencing Guidelines imprisonment range was as noted above 262 to 327 months. (ECF No. 125.)

Now Mr. Ruffin brings an Amended Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 and for Immediate Release on Bail (ECF No. 193.) Among other things, Mr. Ruffin asserts that he no longer qualifies as an armed career criminal under the ACCA. Because the Court concludes that Mr. Ruffin's prior state court robbery conviction no longer qualifies as a violent felony under the ACCA in light of the Supreme Court's holding in *Borden v. United States*, 141 S. Ct. 1817 (2021), he is entitled to vacatur of his sentence and resentencing, and the Court will therefore GRANT Mr. Ruffin's Amended Motion to Vacate. Given the fact that it also appears that Mr. Ruffin has now reached near completion of his non-ACCA enhanced statutory maximum sentence of imprisonment, the Court will hold an immediate Status Conference to schedule an expedited resentencing and will hold in abeyance a decision on Mr. Ruffin's request for release on bail pending resentencing pending that conference.

## I.    BACKGROUND

Mr. Ruffin filed a *pro se* Motion to Vacate on April 18, 2017, challenging, *inter alia*, his designation as an Armed Career Criminal in light of the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) and *Mathis v. United States*, 579 U.S. 500 (2016). (ECF Nos. 164, 183.) Counsel was appointed on April 28, 2017. (ECF No. 167.) The case was temporarily stayed pending the Third Circuit's decision in *United States v. Harris*, No. 17-1861, which was poised to address specifically whether a prior conviction under the Pennsylvania robbery statute qualifies as a predicate offense for the purposes of ACCA. (ECF Nos. 183, 184.)  On June 26, 2018, this Court ordered that an amended petition be filed 45 days after the mandate issued in *Harris*. (ECF No. 184.)

On September 14, 2021, Mr. Ruffin, through his counsel, filed the present Amended Motion arguing, *inter alia*, that there was no longer a need to await the decision in *Harris,* as under the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), his prior state robbery conviction was no longer a violent felony under the ACCA and that the stay should be lifted, and this case should move to decision. (ECF No. 193.)[1] The Court held a telephonic status conference on the Amended Motion and ordered the Government to respond solely on the issue of whether Mr. Ruffin's prior robbery conviction qualifies as a predicate offense for ACCA purposes. (ECF No. 200.) The Government responded on this specific issue on October 25, 2021. (ECF No. 202.) Mr. Ruffin filed a reply on November 1, 2021. (ECF No. 203.) After further additional briefing ordered by the Court, *see* ECF Nos. 205, 206, 207, the Motion is now ripe for disposition.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255, a person in federal custody may move the court to vacate, set aside, or correct an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under this provision is "generally

---

[1] At the time that the Court stayed this case pending *Harris* on June 26, 2018, the Third Circuit in that case, after a lengthy history, had ordered rehearing *en banc* and it was calendared for argument on October 10, 2018. (ECF No. 183.) This argument actually took place on October 16, 2019, but the *Harris* decision was stayed pending the Supreme Court's ruling in *Borden*. Once the decision in *Borden* was issued, the Third Circuit issued an *en banc* order vacating its prior order granting rehearing *en banc* and sent the case back to the original merits panel for disposition. The case is still currently pending before that merits panel and the merits panel is currently awaiting a response to its certification to the Pennsylvania Supreme Court for its resolution of matters related to the Pennsylvania's aggravated assault statute.

Mr. Ruffin argues that this Court need not wait for a decision in *Harris* because *Borden* has settled the issue of whether Mr. Ruffin's prior robbery conviction qualifies as a predicate offense and the Third Circuit panel is "now focused on Pennsylvania aggravated assault . . . ." (ECF No. 205.) The Government argues that the stay in this case should remain in place because *Harris* still concerns determining whether subsection (ii) of the Pennsylvania robbery statute qualifies as a violent felony under the ACCA. (ECF No. 206.) Because this Court determines it can and should decide the issue now before it based on *Borden*, this Court lifts the stay and rules on Mr. Ruffin's Motion.

available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). When there are disputes of material fact, a district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. § 2255(b). *United States v. Tolliver*, 800 F.3d 138, 142 (3d Cir. 2015).

## III.   DISCUSSION

In 2015, following a jury trial, Mr. Ruffin was convicted of violating 18 U.S.C. § 922(g)(1), a statute which prohibits the unlawful possession of a firearm. The statue carries a maximum sentence of imprisonment of 10 years; however, if a defendant is subject to the ACCA the 10-year statutory maximum under this statute becomes a 15-year mandatory minimum sentence.[2] At his sentencing, the Court found that Mr. Ruffin was a covered offender under the ACCA because he had three convictions that qualified as violent felonies: a state robbery conviction, a state aggravated assault conviction, and a federal carjacking conviction. (ECF No. 142, at 7.) Mr. Ruffin argues that at least one of these prior convictions (the robbery conviction) cannot qualify as a predicate violent felony under the ACCA and as a result, his sentencing guideline range without the ACCA enhancement would be 77 to 96 months with a 120-month statutory maximum. (ECF No. 193, at 8.) Further, Mr. Ruffin argues that since he has currently been incarcerated for

---

[2] "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years" 18 U.S.C. § 924.

approximately 108 months (the equivalent of 119 months with good time credit applied), he is "rapidly closing in on the statutory maximum" of 120 months under the statute.[3] (*Id.*; ECF No. 209.)

According to Mr. Ruffin, the Supreme Court's holding in *Borden v. United States*, "makes plain" that Mr. Ruffin's prior first-degree robbery conviction under 18 Pa. C.S. § 3701(a)(1)(i) or (ii) cannot qualify as a violent felony under the ACCA.[4] (ECF No. 193, at 11.) In *Borden*, the Supreme Court held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA." *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021). Mr. Ruffin argues that his conviction for first-degree robbery under Pennsylvania law is such an offense with a *mens rea* of recklessness. Mr. Ruffin argues 1) that the Pennsylvania first degree robbery statute is indivisible and the minimum *mens rea* necessary to satisfy a conviction of the statute is recklessness; 2) even if the statute were divisible, under the modified categorical approach, the *Shepard* documents demonstrate that Mr. Ruffin's conviction can rest on subsection (i) just as much as it can rest on subsection (ii) of the robbery statute, and since subsection (i) permits a conviction based on a *mens rea* of recklessness, his conviction cannot qualify as a violent felony; and 3) even if his conviction rested solely on subsection (ii) of the robbery statute, that subsection also proscribes reckless conduct and therefore, cannot be a violent felony for ACCA purposes. (ECF No. 203.) The Government disagrees with Mr. Ruffin on each argument and argues instead

---

[3] In September of 2021, when Mr. Ruffin originally filed his Amended Petition, he had served 100 months in custody (equating to approximately 110 months if good time credits were to be applied). (ECF No. 193, at 8.). His most recent filing, at ECF No. 209, attaches a sentencing computation sheet from the Bureau of Prisons to support his counsel's current calculation of time served and good time credit earned with the calculations of the Bureau of Prisons as backup.

[4] Mr. Ruffin also argues that his prior convictions for aggravated assault and carjacking do not qualify as predicate offenses. (ECF No. 193.) However, without his robbery conviction, it appears that Mr. Ruffin lacks three qualifying convictions under the ACCA. Therefore, at this time, the Court need not address whether his other prior convictions qualify under the ACCA.

that Mr. Ruffin's first-degree robbery conviction remains a violent felony under the ACCA, despite the decision in *Borden*. (ECF No. 202.)

The Court concludes that Mr. Ruffin's prior state robbery conviction can no longer qualify as a violent felony under the ACCA in light of *Borden*, and as a result the Court will grant his Motion.

### a. Pennsylvania's Robbery Statute is Divisible and the Modified Categorical Approach Applies

When deciding whether a prior conviction qualifies as a predicate offense under the ACCA, courts use the categorical approach. *See Taylor v. U.S.*, 495 U.S. 575, 588 (1990). The categorical approach "requires a comparative analysis based solely on the elements of the crime of conviction contrasted with the elements of a generic version of that offense." *United States v. Mayo*, 901 F.3d 218, 224–25 (3d Cir. 2018) (referencing *Mathis v. U.S.*, 136 S. Ct. 2243, 2247–48 (2016)). However, when the statute at issue is "divisible," courts may use a "modified" categorical approach which "allows a court to assess whether a conviction under that particular statutory subsection would categorically qualify as a predicate offense under the ACCA." *Id.* at 225. However, when a defendant has been convicted of a statute with "a single, indivisible set of elements," the modified categorical approach cannot be employed. *Descamps v. United States*, 570 U.S. 254, 258 (2013).

In 1994, Mr. Ruffin was convicted of Pennsylvania first-degree robbery under 18 Pa. C.S. § 3701(a)(1)(i) or (ii). (ECF No. 203; ECF No. 193-2.) The state court charging document, in relevant part, states that "in the course of committing a theft [Mr. Ruffin] . . . either inflicted serious bodily injury upon Janet Roddenger Merk[,] threatened that person or persons with, or put that person or persons in fear of immediate serious bodily injury, in violation of Section 3701(a)(1)(i) or (ii) of the Pennsylvania Crimes Code . . . ." (ECF No. 193-2, at 3.)

The relevant parts of 18 Pa. C.S. § 3701 read as follows:

**(a) Offense defined.**--
    (1) A person is guilty of robbery if, in the course of committing a theft, he:
        (i) inflicts serious bodily injury upon another;
        (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
        (iii) commits or threatens immediately to commit any felony of the first or second degree;
        (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
        (v) physically takes or removes property from the person of another by force however slight; or
        (vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

    (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

**(b) Grading.**--
    (1) Except as provided under paragraph (2), robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa. C.S. § 3701.

Mr. Ruffin argues that the statute is indivisible since subsections (i), (ii) and (iii) are "alternative means of committing a single offense," of first-degree robbery, "not elements of separate crimes." (ECF No. 203, at 4 n.1.) Accordingly, he argues that the categorical approach should be employed and that under the categorical approach, the "bare minimum necessary to sustain a conviction under that statute is a robbery committed recklessly," which under *Borden*, no longer qualifies as a violent felony. (*Id.* at 3–4.) The Government conversely argues that the statute is divisible and that the subsections clearly lay out elements of the crime of robbery, not simply multiple means of committing the single offense. (ECF No. 202) (citing Third Circuit precedent).

Thus, according to the Government, since the statute is divisible the modified categorical approach must be employed.

The Court agrees with the Government on this point. The Third Circuit has squarely settled this issue by repeatedly holding that the Pennsylvania robbery statute "clearly [lays] out alternative elements" and is "obviously divisible." *United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013); *see also United States v. Peppers*, 899 F.3d 211, 232 (3d Cir. 2018); *United States v. McCants*, 952 F.3d 416, 426 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 431, 208 L.Ed.2d 128 (2020) (clarifying that *Peppers* reaffirmed *Blair's* holding that the Pennsylvania robbery statute is divisible post-*Mathis* and specifically stating that *Mathis* did not abrogate *Blair*.)[5]

---

[5] The Court notes that the Eastern District of Pennsylvania has come out in the opposite direction, concluding that the Pennsylvania robbery statute is indivisible. *See e.g.*, *United States v. Singleton*, 252 F. Supp. 3d 423, 430 (E.D. Pa. 2017) ("First, I analyze whether, under *Mathis*'s first three methods of determining divisibility, the Pennsylvania first-degree robbery statute is divisible. I conclude that when a defendant is charged under all three subsections of the statute—which is the manner in which it is commonly applied by Pennsylvania courts and prosecutors—then the statute is not divisible."); *United States v. Blakney*, CR 11-562-1, 2021 WL 3929694, at *3 (E.D. Pa. Sept. 2, 2021) (relying on *Singleton* and stating that "[a]lthough Judge McHugh construed the first-degree robbery statute, his reasoning applies with equal force to the second-degree robbery statute. He found that when a defendant is charged under all three sections of § 3701(a)(1)(i)-(iii), the statute is indivisible. Similarly, [the defendant] was convicted under § 3701(a)(1)(iv) that includes the same three variants set out in § 3701(a)(1)(i)-(iii).").

While the Court finds the analysis and reasoning with respect to the divisibility argument of these cases logical, the Court concludes that they do not conform with the current mandates of the Third Circuit. First, though *Singleton* was published after *Blair*, it predates the Third Circuit's precedential decisions in *Peppers* and *McCants*. Thus, the specific mandate from the Third Circuit that *Blair* was not abrogated by *Mathis* and "reaffirm[ing] that the Pennsylvania robbery statute is divisible" binds this Court. *McCants*, 952 F.3d at 426. Further, the *Blakney* Court's conclusion regarding divisibility is limited to the *second-degree* robbery statute, subsection (iv), so though it appears to endorse the *Singleton* conclusion that "Pennsylvania's first-degree robbery statute is not divisible when a defendant is charged under its three subsections," such is not controlling here.

And in any event, even if this Court found such a position persuasive, this Court is not bound by either decision of the Eastern District of Pennsylvania in the same way it is bound by the Third Circuit precedent on this issue. *See Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 647 (W.D. Pa. 2018) ("This Court is, of course, bound by the precedential decisions of the Third Circuit."); *see also*, *Manley v. Horsham Clinic*, CIV. A. 00-4904, 2001 WL 894230, at *4 (E.D. Pa. Aug. 9, 2001) ("In matters concerning federal law a District Court is bound only by the decisions of the Court of Appeals for the Circuit in which it sits and by the decisions of the United States Supreme Court. [It is] not bound by the holdings of my fellow district court judges, whose opinions are rendered no more or no less persuasive due to their status as 'published' or 'unpublished.'").

Accordingly, the Court will apply that precedent and employ the modified categorical approach in examining Mr. Ruffin's prior robbery conviction.

### b. The Modified Categorical Approach Fails to Establish On What Set of Elements Mr. Ruffin's Conviction Rests

The modified categorical approach allows the Court to look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of" when statutes have multiple alternative elements. *Mathis v. United States*, 579 U.S. 500, 505 (2016); *see also*, *Shepard v. United States*, 544 U.S. 13, 26 (2005). Review of these documents helps the Court to determine which "alternative elements [were] **integral** to the defendant's conviction (that is, which [were] necessarily found or admitted)." *Mathis*, 579 U.S. at  505 (emphasis added). Once it is determined which elements the defendant was convicted of, courts can then compare convictions under those elements against the generic version of that offense as is required under the categorical approach. *See id.* at 513–14 (citing *Descamps v. U.S.*, 570 U.S. 254, 260 (2013)) (explaining that the modified categorical approach "is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense" and is only employed to determine which elements played a part in the defendant's conviction).

Though the "general rule" is that a defendant has the burden of proof in Section 2255 proceedings, "in regard to issues involving *Shepard* documents, . . . the burden should remain with the government as it would have the greater interest in showing that those documents establish that the conviction qualifies as an ACCA offense." *United States v. Harris*, 205 F. Supp. 3d 651, 662 (M.D. Pa. 2016); *United States v. Evans*, 2:02-CR-00001, 2015 WL 9480097, at *2 (W.D. Pa. Dec. 29, 2015) ("The government argues that, because this is a collateral review that seeks to unravel a

lawfully imposed sentence, the burden should be on [the Defendant] to prove that he did not commit those predicate offenses. The government theorizes that in a § 2255 motion, the burden shifts to Defendant to produce the so-called *Shepard* documents and that Defendant bears the risk if those documents prove to be ambiguous. The Court cannot agree. Defendant has challenged the validity of his sentence and that challenge is cognizable on collateral review under § 2255. Thus, the government retains the burden to demonstrate by a preponderance of the evidence both prior convictions and career offender status."). Consequently, it is the Government's burden to demonstrate that the *Shepard* documents support its position.

If the *Shepard* documents available to the Court do not "make plain" with sufficient certainty that a defendant's conviction rested on the predicate element rather than the non-predicate element of a divisible statute, the court cannot find that the offense rested on the predicate element. *See United States v. Faust*, 853 F.3d 39, 60 (1st Cir. 2017) ("The aim therefore remains on determining the elements that [defendant] **pled guilty to**, not how he committed the particular crime. This focus is particularly important in situations . . . where numerous of the *Shepard* documents . . . fail to specify the type of [crime] at issue and . . . to which [the defendant] pled.") (emphasis added).

In Mr. Ruffin's case, there are two *Shepard* documents in the record before this Court: the state court charging document/Information and the transcript from the guilty plea colloquy. The charging document states that Mr. Ruffin "either inflicted serious bodily injury upon [the victim,] threatened that person or persons with, or put that person or persons in fear of immediate serious bodily injury, in violation of Section 3701(a)(1)(i) or (ii) of the Pennsylvania Crimes Code." (ECF No. 193-2). The first page of the charging document also includes a form, signed by Mr. Ruffin, stating that he "pleads guilty" to "Count 1: Robbery (Section 3701)" and "to the preferred charges

in the within Information." (*Id.*) Since the charging document did not specify under which subsection, (i) or (ii), Mr. Ruffin's conviction rested, it does not reveal with any certainty which elements of the statute were "integral" to his ultimate conviction, nor does it speak plainly regarding the subsection upon which Mr. Ruffin's conviction rested.

The plea colloquy, by contrast, appears to suggest that subsection (ii) was integral to Mr. Ruffin's conviction because the summary of facts provided by the Commonwealth fails to present any facts to suggest that Mr. Ruffin actually inflicted any bodily injury on the victim, which would be conduct that would fit squarely into subsection (i). (*See* ECF No. 193-3, at 3.) The summary of the events the Commonwealth intended to present if the case had gone to trial was presented as follows:

> Commonwealth would present the testimony in this case of Janet and William Merk, M-e-r-k, who would testify that on May 26 of 1993 at approximately ten minutes after ten in the evening Janet was at the ATM, that is the automated teller machine, situated in Dollar Savings Bank at the Penn Hills Shopping Center on Rodi Road in Allegheny County. There were two machines. A tall black female was operating the machine to her right. She claimed it was not operating correctly. As Janet withdrew $50 from the machine and turned to her husband, a black male who was eventually identified as Andre Ruffin approached her, produced a handgun and demanded that she give him the money. When she did so, he said thank you, got into another automobile, an automobile driven by a third person into which the black female had entered, and left. The following day there was another incident, and, as a result of that incident, photo arrays were shown to the Merks by Detective Lauffer (phonetic) of Penn Hills Police Department. They very emphatically picked out the photograph of Andre Ruffin they had encountered the night before who had the gun and who withdrew the $50 from Janet. That's a very brief description of the episode, Your Honor. (*Id.* at 3–4.)

The facts as stated in this summary readily support the inference that the prosecution likely intended to seek to convict Mr. Ruffin by establishing that he either threatened another with, or intentionally put another in fear of serious bodily harm. And, based on this description alone, it does not appear that Mr. Ruffin's conviction could be sustained under subsection (i) which requires actual infliction of serious bodily injury, because the summary makes no allegation that Mr. Ruffin inflicted any bodily injury on anyone, let alone serious bodily injury.

11

However, the summary of facts presented in the plea colloquy must not be viewed in a vacuum. First, and notably, the state trial court did not specifically ask Mr. Ruffin if he actually committed the actions as described in the summary from the Commonwealth nor did Mr. Ruffin affirmatively state that he was pleading guilty in reference to the facts as presented in this summary.[6] *See e.g.*, *Shepard v. United States*, 544 U.S. 13, 26, (2005) ("We hold that enquiry under the ACCA to determine whether a plea of guilty . . .  necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant **in which the factual basis for the plea was confirmed by the defendant**, or to some comparable judicial record of this information.") (emphasis added); *United States v. Powell*, 1:CR-15-0060, 2016 WL 4448427, at *3 (M.D. Pa. Aug. 24, 2016) (finding that where the defendant responded affirmatively to the court asking if he understood the factual basis of the charge and whether he pleaded guilty, that the defendant "did not admit to the conduct underlying the offense, only that the conduct described formed the factual basis of the charge.").

Second, the plea colloquy also demonstrates that Mr. Ruffin was charged with "one count of robbery" without specification of which "elements" of the charge he was actually pleading guilty to. (ECF No. 193-3.) Before the summary by the Commonwealth was provided on the record, the state court and Mr. Ruffin had the following exchange:

---

[6] After the summary was read aloud by counsel for the Commonwealth, the state court judge asked Mr. Ruffin's counsel "Do you have any questions or comments regarding the summary?" and Mr. Ruffin's counsel responded "No, I do not, Your Honor." (ECF No. 193-3, at 4.) The judge then ruled: "The Court feels there is a factual basis for the plea; accordingly, I'll accept defendant's plea." (*Id.*) The signed form attached to the Information indicates that Mr. Ruffin "pleads guilty" to Robbery under "Section 3701." (ECF No. 193-2, at 1.) There is no indication from the rest of the plea colloquy transcript that the state court judge ever asked Mr. Ruffin if he in fact did the actions described in the summary, nor is there any indication that Mr. Ruffin confirmed that he did the actions described in the summary.

THE COURT: You understand at Information 9309881 you are charged with one count of robbery and one count of criminal conspiracy. You are aware of the elements of those offenses and possible penalties?

THE DEFENDANT: Yes.

THE COURT: You have submitted a guilty plea form to the Court. It has the initials AR on each page and your signature at the end. You have read, initialed each of these pages and you signed the form at the end. You are aware of the rights you are waiving by entering a guilty plea; is that correct?

THE DEFENDANT: Yes.

THE COURT: Is there anything on the form you didn't understand that you might want to ask about?

THE DEFENDANT: I asked about it already. (ECF No. 193-3, at 2.)

While the summary of events suggests that Mr. Ruffin's conduct, as described, better supports an inference that his conviction, had it resulted from a trial, would have rested on subsection (ii), the conviction itself arising from Mr. Ruffin's guilty plea plainly appears to rest on both subsections and the plea colloquy reflects that Mr. Ruffin pleaded guilty to the one "count of robbery" as charged by the Information, which squarely references *both* subsections (i) and (ii). *See Faust*, 853 F.3d at 60; *Mathis,* U.S. 579 at 509 ("How a given defendant actually perpetrated the crime—what we have referred to as the 'underlying brute facts or means' of commission, *Richardson*, 526 U.S., at 817, 119 S.Ct. 1707—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence.").[7]

Beyond the facts provided in the summary of the offense, the plea colloquy demonstrates that Mr. Ruffin pleaded guilty and assented to the charge of first-degree robbery as provided by the Information, and the Information charges him under either subsection (i) or (ii) without

---

[7] The Court also notes that the summary of the offense in the plea colloquy is described as only "a very brief description of the episode." It is possible that the Commonwealth may have had more facts establishing that Mr. Ruffin did actually inflict serious bodily injury but decided to omit it for the purposes of the plea hearing because the events as described were enough to establish a factual basis for a conviction under subsection (ii).

specifying any *mens rea*. In other words, there is not enough clarity from the *Shepard* documents upon which the Court can conclude that Mr. Ruffin pleaded guilty *only* to subsection (ii). *See e.g.*, *United States v. Doe*, 810 F.3d 132, 147–48 (3d Cir. 2015) (finding that the *Shepard* materials did not establish that the defendant pleaded guilty to knowing or intentional conduct under the Pennsylvania assault statute in part because "[a]t the plea colloquy, the only reference to Doe's conduct was a question by the prosecutor, 'Do you admit that you did strike him,' and Doe's answer, 'Yes.'")

If the only *Shepard* document available was the plea colloquy, the Court might be more inclined to determine that subsection (ii) was the sole provision that was integral to Mr. Ruffin's conviction. For example, in *United States v. Sunday*, the Eastern District of Pennsylvania held that the defendant was convicted of robbery in violation of subsection (ii) where the Information only used the language of subsection (ii) and "[n]o other subsection of § 3701(a)(1) was identified in the information." 315 F. Supp. 3d 855, 873 (W.D. Pa. 2018). The *Sunday* Court determined that this *Shepard* document established with the "requisite level of certainty" that the defendant was convicted of only violating subsection (ii). *Id.*

Here, by contrast, the summary of events presented does not appear to establish with sufficient certainty that Mr. Ruffin's conviction rested solely on subsection (ii) when considered (as it must be) in combination with a) the charging document, which specifically lists *both* elements as part of the conviction to which Mr. Ruffin pleaded guilty, b) the exchange between the sentencing judge and Mr. Ruffin in the plea colloquy transcript wherein Mr. Ruffin only stated that he pleaded guilty to the charge as detailed in the Information, and c) the absence of any confirmation from Mr. Ruffin as to the factual basis for the plea as accepted by the Court. And the Court declines to give, in essence, extra weight to the "very brief description" provided by the

14

Commonwealth, particularly because doing so comes dangerously close to considering the facts of the underlying crime Mr. Ruffin actually committed, which is disallowed under Supreme Court precedent and would take this Court further away from only using the *Shepard* documents to identify which subsection Mr. Ruffin pleaded guilty to violating, which readily appears to be "either . . . Section 3701(a)(1)(i) or (ii)." (*See* ECF No. 193-2.)

Based on the foregoing, the *Shepard* documents on the whole do not establish that Mr. Ruffin's conviction for "robbery" under either subsection "(i) or (ii)" clearly rests on one subsection over the other. Put differently, the summary of offense provided in the plea colloquy does not establish with the requisite certainty that Mr. Ruffin's conviction rested only on subsection (ii).

After review of the *Shepard* documents in this case, the Court determines that they have rendered the modified categorical approach "a useless tool." *Peppers*, 899 F.3d at 232. Accordingly, the Court must review Mr. Ruffin's conviction in this instance as first-degree robbery under Section 3701(a)(1)(i) or (ii) together and apply the categorical approach. *Id.*

### c.  Mr. Ruffin's Prior Robbery Conviction is Categorically not a Predicate Offense under the ACCA

Under the ACCA, a person convicted of three prior violent felonies, serious drug offenses, or both is subject to a mandatory 15-year minimum sentence. 18 U.S.C. § 924(e). A prior conviction can qualify as a "violent felony" if it contains an element of force or matches the elements of a generic enumerated offense in the statute. *Id.* Under the categorical approach, courts compare the elements of the crime of conviction to the elements of a generic version of the crime. *United States v. Mayo,* 901 F.3d 218, 224–25 (3d Cir. 2018). Here, since robbery is not one of the

ACCA enumerated offenses,[8] it must meet the requirements of the elements clause. The elements clause specifies that any crime punishable by imprisonment for a term exceeding one year that "has an element the use, attempted use, or threatened use of physical force against the person of another" qualifies as a violent felony. 18 U.S.C. § 924(e)(2)(B)(i). However, as previously noted, crimes that can be completed with a *mens rea* of recklessness do not qualify as violent felonies under the elements clause. *See Borden*, 141 S. Ct. at 1825 ('We must decide whether the elements clause's definition of 'violent felony' . . . includes offenses criminalizing reckless conduct. We hold that it does not."). To determine whether a given offense can be committed with a *mens rea* of recklessness under the categorical approach, the Court looks to the text of the statute and may also consider relevant caselaw. *See Mathis v. United States,* 579 U.S. 500, 517–18 (2016).

Mr. Ruffin was convicted under the first degree Pennsylvania robbery statute. Subsection (i) of the Pennsylvania robbery statute, which states that a person is guilty of robbery if in the course of committing a theft she "inflicts serious bodily injury upon another," provides no culpability requirement. Under Pennsylvania law, when "the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa. C.S. § 302(c). Thus, this gap-filling provision applies to subsection (i) of the robbery statute because it "does not require . . . a mental state." *Com. v. Payne*, 2005 PA Super 62, ¶ 22, 868 A.2d 1257, 1263 (Pa. Super. Ct. 2005). The Government also concedes that subsection (i) cannot qualify as an ACCA predicate offense under *Borden* because it can be committed recklessly. (See ECF No. 202, at 15.)

---

[8] The enumerated offenses are "burglary, arson, or extortion, [an offense that] involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Since this provision of the statute is broader than the generic requirements of the elements clause under the ACCA, Mr. Ruffin's state robbery conviction cannot qualify as a predicate offense. *See United States v. Peppers,* 899 F.3d 211, 220 (3d Cir. 2018) ("Since we have no *Shepard* documents to guide us and are thus left to apply the categorical approach in assessing [defendant's] robbery convictions, we must assume he was convicted under the third degree robbery provisions and hence under a provision of Pennsylvania law that is broader than the generic requirements of the elements clause of the ACCA.") Accordingly, his sentence enhancement is now legally erroneous, and he is entitled to a resentencing.[9]

### d.  Subsection (ii) of the Pennsylvania Robbery statute is also not a predicate offense under the ACCA in light of *Borden*

Even if the Court concluded that the *Shepard* documents demonstrated with sufficient clarity that Mr. Ruffin's conviction rested only on subsection (ii), the Court determines that subsection (ii) of the Pennsylvania robbery statute also proscribes reckless conduct and thus also would not qualify as a violent felony under the ACCA in light of *Borden*.

The Government argues that a threat requires a *mens rea* of intent and therefore the whole of subsection (ii) still qualifies as a violent felony. (ECF No. 202, at 17.) But the Third Circuit has acknowledged that a "threat" alone describes only an *actus reus. Larios v. Attorney Gen. United States*, 978 F.3d 62, 71 (3d Cir. 2020)("[A] 'threat[ ] to commit a crime of violence' [is] simply the actus reus . . . and [does] not carry its own implicit *mens rea*, independent of that specified in the statute.") (citing *Bovkun v. Ashcroft*, 283 F.3d 166, 170 (3d Cir. 2002)). Further in *Larios*, the Third Circuit specifically acknowledged that a "reckless threat" was the "least culpable conduct"

---

[9] The Court also notes that the characterization of Mr. Ruffin as a career offender based on a conviction that is no longer a predicate offense was not harmless and he was plainly prejudiced by his 300-month sentence, which could not have exceeded 120 months without the ACCA enhancement.

under the New Jersey terroristic-threats statute at issue in that case. *Id.* at 71 n.4.[10] Thus, by this Court's estimation, reckless threats can be proscribed, and, in this case, the Pennsylvania robbery statute does proscribe reckless threats under 18 Pa. C.S. § 302(c), the gap-filling provision, since the statute omits a *mens rea* that modifies the *actus reus* of "threaten[ing] another with  . . . immediate serious bodily injury." *See United States v. Giles*, CR 94-20-01, 2021 WL 5418158, at *4 (E.D. Pa. Nov. 19, 2021) (acknowledging the *expressio unius est exclusion alterius* canon and the rule of lenity in interpreting subsection (iv), second degree robbery, of the Pennsylvania robbery statute and concluding that the "drafters of the robbery statute chose to only mention a *mens rea* requirement of intent" when describing putting another in fear of immediate bodily injury) (referencing  *United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021)).

While a threat requires consciousness of a certain outcome, that does not necessarily mean that it must be intentional. *Compare e.g.*, 18 Pa. C.S. § 302(b)(3) (defining that "[a] person acts recklessly with respect to a material element of an offense when he **consciously** disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.") (emphasis added) *with* 18 Pa. C.S. § 302(b)(1) (defining that "[a] person acts intentionally with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his **conscious** object to engage in conduct of that nature or to cause such a result and (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.") (emphasis added).

---

[10] The New Jersey terroristic-threats statute at issue in *Larios* reads as follows: "A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." *Larios v. Attorney Gen. United States*, 978 F.3d 62, 68 (3d Cir. 2020). Based on state case law, the Third Circuit determined that the *actus reus* was "threatens to commit any crime of violence," and the *mens rea* was "either purpose . . . or . . . reckless disregard of the risk." *Id.* at 68–69.

18

A person can threaten another with immediate serious bodily injury by consciously disregarding the substantial risk that such action constitutes a threat to cause immediate serious bodily injury, or a person can threaten another with immediate serious bodily injury by consciously desiring for his conduct to constitute such a threat and both appear to be equally punishable under the statute. And in the Court's judgment, culpability based on the conscious disregard of a substantial risk is the epitome of recklessness. *See e.g.*, *Borden*, 141 S. Ct. at 1824 ("Recklessness . . . [is a] less culpable mental state[] because [it] involve[s] insufficient concern with a risk of injury. A person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards.") (citations omitted).

Additionally, if the intent requirement "logically extend[ed] to the entire statute" as the Government contends, *see* ECF No. 202, at 16, it would render the phrase "intentionally puts him in fear of" superfluous. *Hayes v. Harvey*, 903 F.3d 32, 42 (3d Cir. 2018) ("It is . . . a well-established canon of statutory interpretation that statutes should be read to avoid making any provision superfluous, void, or insignificant.") (citations and quotations omitted); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (stating that the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"); *Giles*, 2021 WL 5418158, at *4 ("In this case, the drafters of the robbery statute chose to only mention a mens rea requirement of intent when listing the third and final of the three distinct acts described in subsection (iv). This would be a puzzling way to write the subsection if the drafters had intended a mens rea requirement of intent to apply to the preceding acts listed in the subsection as well.").

Further, the broad use of this statute in Pennsylvania courts to capture a wide array of criminal behavior signals to the Court that there is a "realistic probability, not a theoretical possibility, that the State would apply its statute" to reckless threats which "fall[] outside the generic definition of [the] crime [of robbery]" *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."); *see also* (ECF No. 203) (citing two state cases *Com. v. Latham*, 1234 WDA 2015, 2016 WL 1221657, at *1 (Pa. Super. Ct. Mar. 29, 2016) and *Com. v. Murtha*, 35 Pa. D. & C.3d 554, 556, 1985 WL 5428, at *1 (Pa. Com. Pl. 1985) which each reference an information filed by the Commonwealth that states in relevant part that the defendant convicted of robbery "did intentionally, knowingly or **recklessly** in the course of committing theft, threaten or intentionally put in fear of immediate serious bodily injury [the victims] . . . .") (emphasis added).

The case law in Pennsylvania suggests that reckless actions can sustain a conviction under subsection (ii). Pennsylvania courts have held that the government "need not prove a verbal utterance or threat to sustain a conviction under Section 3701(a)(1)(ii)" but instead it is "sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety." *Commonwealth v. Ouch*, 2018 PA Super 314, 199 A.3d 918, 924 (2018).[11] This suggests that there is no specified *mens rea* requirement for threats under subsection (ii) since the focus was on

---

[11] In *Ouch*, the defendant attempted to shoplift from a seafood market and tried to pull a firearm from his waistband when he was stopped by the security guard at the doorway. The security guard smacked his hand away before he was able to produce any firearm and the defendant ran away. The Court held that this was sufficient evidence for the Commonwealth's prima facie burden to make out the elements of first-degree robbery under subsection (ii) because the threat posed by an appearance of a firearm is calculated to inflict fear of deadly injury. *Commonwealth v. Ouch*, 2018 PA Super 314, 199 A.3d 918, 924 (2018).

whether the actions threatened that victim's safety or whether the potential for bodily harm from those actions actually existed, regardless of the intent of the defendant. *See also Com. v. Miller*, 2017 WDA 2013, 2015 WL 7082212, at *2 (Pa. Super. Ct. May 11, 2015) ("The evidence is sufficient to convict a defendant of robbery under this section 'if the evidence demonstrates aggressive actions that threatened the victim's safety.' *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011). The court must focus 'on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury.' *Id.* (citations omitted). Additionally, this Court has held that the threat need not be verbal. *Id.*").

Pennsylvania courts have also held that an implied threat can support a conviction under subsection (ii). *Com. v. Bragg*, 2016 PA Super 25, 133 A.3d 328, 332 (2016), *aff'd sub nom. Commonwealth v. Bragg*, 642 Pa. 13, 169 A.3d 1024 (2017); *see also Com. v. Davis*, 313 Pa. Super. 355, 364–65, 459 A.2d 1267, 1272  (1983).[12] For instance, in *Bragg*, the defendant entered the bank, disguised with sunglasses, a baseball cap, and surgical gloves, and asked the teller "what are you looking at?" 2016 PA Super 25, 133 A.3d 328, 332 (2016). He banged his fists on the counter and demanded that the teller put the money in his bag. *Id.* The Court held that although the defendant did not brandish a weapon or make verbal threats, his actions "placed employees and customers of [the bank] in fear of serious bodily injury."  *Com. v. Bragg*, 2016 PA Super 25, 133 A.3d 328, 332 (2016). The *Bragg* Court did not establish that or discuss whether the defendant intended to threaten the employees or put them in fear of serious bodily injury.

---

[12] In *Davis*, the defendant climbed through the shop window and told the cashier "Get back, get back." The court held that the mode of entry and his warning were enough to imply a threat of imminent bodily harm. *Com. v. Davis*, 313 Pa. Super. 355, 365, 459 A.2d 1267, 1272 (1983).

However, the state case law is not completely instructive. For example, in *Ouch*, the Pennsylvania Court stated that "a reviewing court will consider the defendant's intent and actions and not necessarily the subjective state of mind of the victim." *Ouch*, 2018 PA Super at 199. Further in some cases, Pennsylvania courts seem to conflate the "threatens another" language with the "intentionally puts [another] in fear of" language and appear focused on the defendant's intent. *See e.g.*, *Com. v. Nelson*, 399 Pa. Super. 618, 624, 582 (1990) ("This evidence clearly supports the trial court's inference that appellant intended to threaten serious bodily injury.") [13]

Still, based on the foregoing, it appears that at a *minimum*, "threatens another" under the statute can be satisfied through actions generating the implication of a threat, which can be achieved without a *mens rea* of intent.[14] This suggests that the *mens rea* of intent does not run throughout the subsection and since the "least culpable conduct hypothetically necessary to sustain a conviction" is the reckless making of threats, a conviction under this subsection cannot be a crime of violence for federal sentencing purposes. *United States v. Quinnones*, 16 F.4th 414, 418–19 (3d Cir. 2021) ("Having determined [what part of the statute] formed the basis for [defendant's] conviction, we look at that offense's elements to ascertain the least culpable conduct hypothetically necessary to sustain a conviction.") (citing *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016)) (internal quotations omitted).

---

[13] In *Nelson*, the defendant announced the robbery, and his co-felon brandished a weapon. The defendant also told the bar owner to "Shut up or my boy [his co-felon] will take care of you." The defendant argued that there was not enough evidence to show that he intended to place his victims in fear of serious bodily injury because the bartender didn't appear afraid, and the defendant did not have a weapon. The court found that his actions demonstrated that the defendant's intent was to threaten serious bodily injury, even if it didn't actually produce the intended fear. *Com. v. Nelson*, 399 Pa. Super. 618, 624, 582 A.2d 1115, 1118 (1990).

[14] *See e.g.*, *Com. v. Thomas*, 376 Pa. Super. 455, 460, 546 A.2d 116, 119 (1988) ("[T]he statute instructs that in determining the grade of the felony we focus on the intent *or* act of the defendant and not the subjective state of mind of the victim.") (emphasis added).

The Eastern District of Pennsylvania came to a similar conclusion in *United States v. Blakney*.[15] In *Blakney*, the Court analyzed the second-degree robbery statute which mirrors the language of the first-degree robbery subsection at issue in this case. *United States v. Blakney*, No. CR 11-562-1, 2021 WL 3929694, at *1 (E.D. Pa. Sept. 2, 2021). Pennsylvania's second-degree robbery statute provides that "a person is guilty of robbery if, in the course of committing a theft, he ... inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa. Stat. and Cons. Stat. Ann. § 3701(a)(1)(iv). The *Blakney* Court suggested that the three prongs of this subsection could have separate *mens rea* requirements, with only the "placing of another in fear" prong requiring a *mens rea* of intent. *Id.* at *2 (finding that a threat does not always involve intentional conduct and "[j]ust as a defendant can cause bodily injury recklessly, so too could he pose a threat recklessly without intending to do so."); *see also*, *United States v. Parrott*, CR 09-245, 2022 WL 377017, at *4 (E.D. Pa. Feb. 8, 2022) (examining the Pennsylvania second degree robbery statute and stating that "[t]he intentionally *mens rea* applies only to the act of putting someone in fear of immediate bodily injury; it does not apply to threatening another with immediate bodily injury.") The *Blakney* Court rejected the Government's argument that the subsection stated only two crimes: one that can be committed with reckless conduct (infliction of bodily injury) and one that requires intentional conduct (threatens or intentionally puts him in fear of immediate bodily injury). *Id.* In response to this argument, the *Blakney* Court stated that "[i]t appears the government parsed the statute into parts to accommodate its argument to get around *Borden*." *Id.* Instead, the Court concluded that a

---

[15] Mr. Ruffin substantially cites to and relies on this case in arguing that subsection (ii) is not a crime of violence under *Borden*. (*See* ECF No. 203, at 23–24).

defendant's reckless conduct can result in a threat and the subsection contains "either of . . . three alternatives, at least one if not two of which include reckless conduct." *Id.* at *3.

The reasoning in *Blakney* is persuasive.[16] The most natural and logical reading of the first-degree robbery statute leads to the conclusion that subsection (ii) is not a crime of violence for purposes of the ACCA because at least one of the means for sustaining a conviction under this element (threatens another) can be committed with a *mens rea* of recklessness. Not only is this position more consistent with the Pennsylvania case law, but it also avoids the absurd outcome wherein subsection (i), which requires actual infliction of serious bodily injury and, as evidenced by the higher offense gravity score affixed to it, is considered more serious, fails to lead to a sentencing enhancement under the ACCA while subsection (ii) of the same statute, which does not require any actual infliction of serious bodily injury and is arguably less serious in terms of the outcome of the criminal conduct, leads to a sentencing enhancement under the ACCA.[17] *See Com.*

---

[16] The Government cites two pre-*Borden*, nonprecedential cases, from the Third Circuit addressing subsection (ii) of the Pennsylvania robbery statute. In *United States v. Heng Khim*, the Court held that subsection (ii) "categorically involves the use or attempted use of physical force" as defined by the Sentencing Guidelines. 748 F. App'x 440, 444 (3d Cir. 2018) ("Taken together, then, the minimum conduct sufficient to sustain a conviction under § 3701(a)(1)(ii) is a threat that intentionally puts another in fear of immediate 'impairment of physical condition or substantial pain' that 'creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.'"). In *United States v. Dobbin*, the Court held that since subsection (ii) "requires that the offender 'threaten[ ] another with or intentionally put[ ] him in fear of immediate serious bodily injury,' his convictions satisfy [the Guidelines.]" 629 F. App'x 448, 452 (3d Cir. 2015).

While the Court acknowledges these cases, the Court notes that these cases are nonprecedential. *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) ("[Nonprecedential opinions] are not regarded as precedents that bind the court because they do not circulate to the full court before filing. *A fortiori*, they are not precedents for the district courts of this circuit.") (internal citations and quotations omitted). More importantly, since neither case specifically analyzes the question of what the minimum *mens rea* attributed to that specific subsection is, the Court concludes that their reasoning and assessment of the subsection is less persuasive, particularly in light of the analysis set out above.

[17] For example, under the Government's theory, if a person shoots someone in the course of a theft and is charged under subsection (i), she will not get her sentence enhanced under the ACCA. However, if that same person, as she was fleeing the scene of a theft, threatened another with serious bodily injury without the use of any weapon (for example, by speeding recklessly down a busy street but failing to actually inflict serious bodily injury) and is charged under subsection (ii), she will get an ACCA enhanced sentence, even though both scenarios would be considered "first-degree robbery" under Pennsylvania law and the conduct in the first instance is more violent and arguably more objectionable.

24

*v. Payne*, 2005 PA Super 62, ¶ 18, 868 A.2d 1257, 1262 (Pa. Super. Ct. 2005) ("The difference [between subsection (i) and (ii)] is indeed important since the offense gravity score affixed to a § 3701(a)(1)(i) robbery is higher than for the § 3701(a)(1)(ii) variety."); 73 Am. Jur. 2d Statutes § 163 ("A court must construe statutes to avoid unreasonable or absurd results; or, as sometimes, stated, a court should not adopt an interpretation which produces absurd or unreasonable results if such interpretation can be avoided.") While the statute may be divisible, the Court finds that such a position would create a loophole for "get[ting] around *Borden*." *See Blakney*, 2021 WL 3929694 at *2.[18]

Thus, since the Court determines that subsection (ii) can be satisfied with a *mens rea* of recklessness, in light of *Borden*, it cannot be a predicate violent felony under the ACCA. And, as detailed above and as the Government concedes, subsection (i) also can be satisfied with a *mens rea* of recklessness, so it also cannot qualify as a predicate violent felony under the ACCA. Accordingly, the Court will grant Mr. Ruffin's § 2255 motion and vacate his sentence.

While the Court has discretion to vacate the judgment, grant a new trial, resentence, or correct the sentence, *see* 28 U.S.C. § 2255(b), based on the foregoing, only Mr. Ruffin's sentence is determined to be defective. *See United States v. Green*, 2:04-CR-00233, 2020 WL 4034834, at

---

[18] The Court also notes that it is unpersuaded by the Government's argument that subsection (ii) is "itself . . . divisible." (ECF No. 202, at 19.) Subsection (ii) does not provide two alternative elements, but rather contains two means of committing this kind of first degree robbery. *See Mathis v. United States*, 579 U.S. 500, 519 (2016) ("Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct—his particular means of committing the crime—falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were—just the facts, which ACCA (so we have held, over and over) does not care about."); *see also*, *United States v. Maldonado*, CR 10-288, 2016 WL 4206371, at *4 (E.D. Pa. Aug. 9, 2016) ("Although Pennsylvania's robbery statute is divisible, analysis here employs only the traditional categorical approach since subsection (ii) served as the basis for each of [Defendant's] predicate convictions.").

*6 (W.D. Pa. July 17, 2020) ("When . . . only the sentence is constitutionally defective, such may be corrected only by resentencing or correcting the sentence.") Accordingly, the Court determines that it is appropriate to order a full resentencing, rather than a correction of his sentence now, particularly since both parties have not had the opportunity to more fully address matters related to the appropriate sentence.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Ruffin's Amended Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 193) will be GRANTED. The Court will hold an immediate Status Conference to set an expedited resentencing hearing. The Court will therefore hold in abeyance a ruling on Mr. Ruffin's Motion for Immediate Release on Bail until after such Status Conference occurs.

An appropriate Order will follow.

DATED this 11th day of May, 2022.

/s/ Mark R. Hornak
MARK R. HORNAK
Chief United States District Judge

26